O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES EDWARD WHALEY, | ) Case No. CV 10-7210-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the four disputed issues listed in the Joint Stipulation ("JS").[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See ECF Nos. 9, 15.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR") and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 8 at 3.)

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly evaluated Plaintiff's mental impairment;

(2) Whether the ALJ properly considered Plaintiff's testimony;

(3) Whether the ALJ properly determined Plaintiff's residual functional capacity ("RFC"); and

(4) Whether the ALJ properly relied on testimony of the Vocational Expert ("VE").

(JS at 6.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

# III.
# DISCUSSION

## A. The ALJ's Findings.

The ALJ found that Plaintiff has severe physical and mental impairments, including seizure disorder, alcohol dependence in remission per self-report, mood disorder not otherwise specified, and personality disorder with dependent traits. (AR at 19.) He also found that Plaintiff's medically determinable impairments cause significant limitations in his ability to perform basic work activities. (Id.)

The ALJ further found that Plaintiff had the RFC to perform work at all exertional levels, with occasional climbing of ramps and stairs. (Id. at 21.) However, he is precluded from climbing ladders, ropes, or scaffolds, and from work around hazards "(unprotected heights, moving machinery, etc.)." (Id.) Plaintiff was further limited to simple, routine, repetitive work with occasional contact with the public. (Id.)

Relying on the testimony of a VE, the ALJ determined that Plaintiff was unable to perform his past relevant work of Shipping and Receiving Clerk (Dictionary of Occupational Titles ("DOT") No. 222.387-050). (AR at 24.) The ALJ also relied on the VE's testimony to determine that there were alternative occupations Plaintiff could perform, such as Product Inspector (DOT No. 712.684-050), Gluer/Labeler (DOT No. 795.687-014), and Product Packer (DOT No. 920.687-166), that exist in significant numbers in the national economy. (AR at 25.)

## B. The ALJ Properly Evaluated Plaintiff's Mental Impairment.

Plaintiff claims that the ALJ erred in translating Plaintiff's mental limitations into an ability to perform only simple, routine, repetitive work without fully considering his impairments. Specifically, Plaintiff faults the ALJ for failing to consider Plaintiff's deficiencies of concentration in

3

1 | determining that Plaintiff was capable of performing simple, routine, repetitive
2 | work, and by not considering whether Plaintiff would be capable of adapting to
3 | the stress of work. (JS at 6-9.)

On May 20, 2008, consultative examiner Rosa Colonna, Ph.D., conducted a Complete Psychological Evaluation of Plaintiff. (AR at 241-45.) Dr. Colonna reported that Plaintiff's attention and concentration span were mildly diminished. (Id. at 243.) However, Dr. Colonna concluded that Plaintiff was capable of performing simple, repetitive work and would be able to make simplistic work-related decisions without special supervision. (Id. at 244-45.)

On June 2, 2008, agency physician Raffi Tashjian, M.D., completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique Form. (Id. at 246-59.) Dr. Tashjian reported that Plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, but could complete simple, repetitive tasks. (Id. at 246-48.) Dr. Tashjian gave conflicting indications regarding Plaintiff's ability to maintain concentration, persistence, or pace. On the first page of the Psychiatric Review Technique Form, Dr. Tashjian indicated that Plaintiff was moderately limited in that area. (Id. at 257.) However, on the final page of the form, Dr. Tashjian indicates that Plaintiff is mildly limited in that area. (Id. at 259.)

On December 10, 2009, just days before Plaintiff's hearing, Plaintiff's treating physician, Noobar Janoian, M.D., completed a general evaluation of Plaintiff's physical and mental impairments. (Id. at 346-50.) Ultimately, Dr. Janoian concluded that Plaintiff "will not be able to engage in any type of productive work that requires regular job-related stress, focused attention and concentration, as well as regular contact with coworkers." (Id. at 350.)

The ALJ concluded from this evidence that Plaintiff had moderate

difficulties maintaining concentration, persistence, or pace, but that he would be capable of performing simple, routine, repetitive work. (Id. at 21.) The ALJ found that the opinions of Dr. Janoian were consistent with the opinions of the agency physicians, and thus adopted all of those opinions. (Id. at 23.)

The ALJ did not err in failing to consider Plaintiff's limitations in concentration when considering Plaintiff's mental impairment. In Stubbs-Danielson v. Astrue, an examining physician opined that the plaintiff suffered from several mild limitations in areas of mental functioning. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008). A state agency physician further identified several moderate limitations in other mental areas, but "ultimately concluded [that the plaintiff] retained the ability to carry out simple tasks as evidenced by her ability to do housework, shopping, work on hobbies, cooking and reading." Id. (internal quotation marks omitted). The ALJ concluded that the state agency physician's opinion that the plaintiff was limited to "simple tasks" *included* the other limitations opined by the state agency physician. Id. at 1174. Therefore, the Ninth Circuit held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is *consistent with restrictions identified in the medical testimony*." Id. (emphasis added).

Here, as the ALJ did in Stubbs-Danielson, the ALJ "translated [Plaintiff's] condition . . . into the only concrete restrictions available to him . . . 'simple tasks.'" Id. Dr. Janoian did not define what he meant by "*focused attention and concentration.*" However, the Agency physicians who also found deficits in Plaintiff's ability to pay attention and concentrate agreed that Plaintiff's limitations in this area did not prevent him from carrying out simple, repetitive work. Ultimately, the ALJ's assessment of Plaintiff adequately captured the concentration restrictions identified in the medical testimony.

As to Plaintiff's ability to manage work-related stress, there is simply no

5

indication from any medical source that Plaintiff was not capable of handling the potential stress related to simple, repetitive work. Although Dr. Janoian stated that Plaintiff could not perform work requiring "regular job-related stress," he again failed to define his conclusion. (AR at 350.) As a result, it is thus unclear whether Dr. Janoian intended to prevent Plaintiff from engaging in work that was accompanied by a stress level that might be found in an average work-place scenario, or whether he might have intended to prevent Plaintiff from engaging in work that resulted in job-related stress on a regular or consistent basis. On the other hand, Dr. Colonna concluded that Plaintiff was capable of making simplistic work-related decisions without special supervision. (Id. at 244-45.) Notwithstanding Dr. Janoian's opinion, there is no evidence that the jobs identified by the ALJ would result in any quantifiable job-related stress or that Plaintiff would be incapable of managing these types of positions. In the end, it is the Plaintiff's burden to prove disability, Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005), and Plaintiff has failed to prove that he is incapable of managing the stress, if any, potentially inherent in the jobs identified by the ALJ.

Based on the foregoing, the Court finds the ALJ properly assessed Plaintiff's mental impairment. Thus, there was no error.

**C.    The ALJ Properly Considered Plaintiff's Testimony.**

Plaintiff next contends that the ALJ erred by failing to provide clear and convincing reasons for discrediting Plaintiff's testimony regarding his subjective complaints. (JS at 12-14.)

**1.    Applicable Law.**

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny

benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient.)

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir. 1991). An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted). An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. § 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on the fact that only

conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities and the lack of side effects from prescribed medication).

**2. Analysis.**

The Court finds that the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints less than credible and that any error was harmless.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they conflicted with the ALJ's RFC assessment. (AR at 22.)

Plaintiff alleged that a mass in the left side of his neck caused him to become dizzy and lightheaded when he turned his neck. (Id. at 57.) With respect to this allegation, the ALJ did not reject Plaintiff's complaints, but merely concluded that the record was "devoid of evidence to indicate that this growth creates any limitation in his ability to perform work related activities." (Id. at 19.) The record supports the ALJ's reasoning on this point. There is no medical evidence supporting Plaintiff's allegation. More importantly, Plaintiff did not allege that his symptoms of dizziness and lightheadedness were so severe as to preclude work activity beyond the limitations the ALJ provided for Plaintiff's seizure disorder, i.e., no climbing ladders, ropes, or scaffolds, and no exposure to heights or moving machinery. (Id. at 21.)

In addition, with respect to all of Plaintiff's alleged symptoms stemming from his mental impairments, the allegations were credited by the ALJ and incorporated into his RFC assessment. (Id. at 20-21, 23.)

Next, Plaintiff alleged limitations with respect to his left shoulder resulting from being hit by a car while riding his bicycle. (Id. at 37-38, 60.)

The ALJ rejected the severity of Plaintiff's shoulder complaints because of the conservative treatment sought and received by Plaintiff. (Id. at 19-20.) This is a legitimate reason for rejecting Plaintiff's complaints regarding his shoulder injury. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may properly rely on unexplained or inadequately explained failure to seek treatment); Johnson, 60 F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment had been prescribed).

Plaintiff further testified that he suffers from major seizures four to five times per year, and smaller seizures one to two times per month. (AR at 38.) The ALJ rejected Plaintiff's complaints regarding his seizures on the basis that Plaintiff has a history of noncompliance with his medications and that his condition is well controlled with medication when used in accordance with prescribed treatment. The ALJ credited Plaintiff's claims that he was noncompliant with medication because he could not afford the cost of the medication, but found evidence that Plaintiff had also been noncompliant for unjustified reasons. (Id. at 22.) The record supports the ALJ's conclusion. For instance, on January 16, 2007, Plaintiff underwent a neurology evaluation at Olive View Medical Center. He indicated at that time that he had not filled his prescription because he "didn't want to wait." (Id. at 166.) The doctor concluded at that time that Plaintiff was noncompliant with his medications. (Id. at 167.) This was a sufficient basis upon which the ALJ could reject the severity of symptoms alleged by Plaintiff. Smolen, 80 F.3d at 1284.

Finally, there is evidence in the record of Plaintiff's knee problems (id. at 191, 269, 308, 337), and there are extensive reports throughout the record regarding Plaintiff's complaints of headaches (id. at 195, 206, 242, 264, 274, 276, 286, 297, 303, 304, 306, 313, 314, 320, 336, 339, 346, 349, 355, 370, 372). In addition, Plaintiff complained at the hearing before the ALJ that he has gotten headaches every day for the past "few years." (Id. at 43.) Later in

his testimony, Plaintiff clarified that he gets one or two headaches of about 20 minute duration every "couple of days," and gets headaches lasting about 12 hours "once or twice every three to four months." (Id. at 58.) Plaintiff testified that he does not take medication such as Excedrin or Aleve for his short headaches because "[t]hey would take too long, and most of the time it never even works." (Id at 59.) Plaintiff also testified that he continues to suffer from knee pain. (Id. at 43.) The ALJ never explicitly discussed Plaintiff's headaches or knee pain anywhere in his opinion. However, the ALJ did appear to give a general rejection of Plaintiff's credibility as a whole based on what the ALJ deemed to be inconsistencies in Plaintiff's statements regarding his past use of alcohol. The ALJ stated:

> Moreover, the claimant's credibility is further reduced by his own reported history of alcohol abuse. At the hearing in December 2009, the claimant testified that he had not drunk alcohol in one year. However, at the complete psychological evaluation in May 2008, he stated that he had not had alcohol for several years. These inconsistent statements tend to undercut the claimant's credibility regarding his subjective allegations. Accordingly, I have given his allegations of disabling symptoms less weight and find that he does not have limitations beyond those stated in the residual functional capacity given above.

(Id. at 23.)

The Court finds that this reasoning is not clear and convincing. It is simply not inconsistent for Plaintiff to state that he did not drink alcohol for several years prior to his May 2008 evaluation and again for about one year prior to his December 2009 hearing. It is possible that Plaintiff abstained from alcohol for several years before May 2008, consumed alcohol sometime between May 2008 and December 2008, and again abstained from alcohol for

the one year between December 2008 and December 2009.

Despite the fact that the ALJ's reason is not clear and convincing, the error was harmless as it relates to Plaintiff's complaints of headache and knee pain, as it is inconsequential to the ultimate decision and the ALJ's disability determination nonetheless remains valid. Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

Despite Plaintiff's complaints of headaches and knee pain, no treating source ever provided any specific treatment. Certainly, no medical source ever found that Plaintiff's headaches and knee pain prevented him from working. Similarly, although Plaintiff testified to the headache and knee pain, his testimony did not indicate that he would be prevented from any type of work activity because of the pain. Most significantly, Plaintiff's treating source took Plaintiff's headaches and knee impairment into consideration in concluding that Plaintiff could not "engage in any type of productive work that requires regular job-related stress, focused attention and concentration, as well as regular contact with coworkers." (AR at 346, 347, 349, 350.) Based on the medical evidence and Plaintiff's own testimony, even had the ALJ fully credited Plaintiff's complaints of headache pain, it would not have provided a basis on which to conclude that he was disabled.

On these facts, any error in not considering Plaintiff's headaches and knee pain is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid. Based on the foregoing, the Court finds the ALJ did not err in rejecting Plaintiff's credibility and any potential error was harmless. Thus, there was no error.

**D.     The ALJ Properly Determined Plaintiff's RFC.**

Plaintiff alleges that the ALJ erred in assessing Plaintiff's RFC because the ALJ did not consider the combination of all of Plaintiff's alleged impairments. (JS at 22-26.)

Plaintiff's allegations are simply unsupported by the record. In his December 10, 2009, report, Plaintiff's treating physician, Dr. Janoian, took into account an exhaustive list of complaints and alleged impairments from Plaintiff's medical history. (AR at 346-50.) Dr. Janoian ultimately concluded in this report that Plaintiff could not "engage in any type of productive work that requires regular job-related stress, focused attention and concentration, as well as regular contact with coworkers." (Id. at 350.) This conclusion, which encompassed all of Plaintiff's limitations and impairments, was adopted by the ALJ and included in the ALJ's RFC assessment. (Id. at 23.) Thus, there was no error.

**E.     The ALJ Properly Relied on the VE.**

Plaintiff contends that the ALJ failed to incorporate all of Plaintiff's limitations into the hypothetical question he posed to the VE. (JS at 28-31.)

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting Flores v. Shalala, 49 F.3d 562, 570-71 (9th Cir. 1995)). Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations that the ALJ finds to exist. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); Copeland v. Bowen, 861 F.2d 536, 540 (9th Cir. 1988); Martinez v. Heckler, 807 F.2d 771, 773-74 (9th Cir. 1986). Thus, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995)); see also Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

1  As discussed above, the ALJ properly determined Plaintiff's RFC. The hypothetical to the VE included those restrictions the ALJ properly found to exist. (AR at 61.) Additionally, the VE independently noted that the Plaintiff could not perform his prior job as a shipping and receiving clerk (DOT 222.387.050) because that semiskilled job went beyond simple, routine, repetitive work. (Id. at 62.) Thus, he implicitly took into account the opinions of Dr. Janoian and the agency physicians.

Based on the foregoing, the Court finds there was no error in the ALJ's hypothetical question to the VE. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: November 9, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge